**Stephen Wayne MOORE and Ronald Lynn Houston, Appellants,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 2, 1978.

Certiorari Denied by Supreme Court May 8, 1978.

Jay Fred Friedman, Barry A. Wiener, Memphis, for Moore.

J. F. Nelson, Anthony J. Sabella, Memphis, for Houston.

Brooks McLemore, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Nashville, James D. Wilson, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

WALKER, Judge.

Stephen Wayne Moore and Ronald Lynn Houston appeal from their convictions of knowingly maintaining a building for keeping and selling a controlled substance, marijuana, and their sentences of three to seven years in the penitentiary. TCA 52–1435(a)(5).

Although neither appellant challenges the sufficiency of the evidence, we outline the essential facts of the offense. Neither appellant testified.

From October 7 to November 7, 1975, undercover Memphis police officers made a number of purchases of marijuana from each of the appellants at Stevie Moore's Tailoring Shop at 1529 McMillan Street. Officer Triplett talked to Houston there on October 7 about some clothing alterations and bought 20 marijuana cigarettes from him. On the same day his partner, Detective Hering, also purchased 17 similar cigarettes from Houston.

On November 1 Officer Dorothy Boyd and her partner, Officer Samuel Jackson, went to the premises and purchased marijuana from Moore who was aided by Houston. About five persons were standing in line to buy. On November 5 the officers returned and each purchased an ounce from Houston; they came back the next day and made another purchase from him. On November 7 they went to the place again; both appellants were there and Moore opened the building and again sold marijuana to them. Officers Boyd and Jackson were operating under Sergeants Penn and Payne and turned over their purchases to these officers.

Armed with a search warrant obtained by Detective Moses, a number of officers went to the tailor shop on November 7. Moses found Houston in charge of the place and gave him the search warrant; Moore was not present then. Marijuana was on a cutting table and scales were nearby. Officer Clemmer found 13 ounces of marijuana and Detective Moses located about half a pound.

■ Both appellants insist that TCA 52–1435(a)(5) applies only to registrants and for that reason their convictions are void.

TCA 52–1435(a)(5) makes it "(U)nlawful for *any* person" (emphasis supplied) knowingly to maintain premises of the nature shown by the proof here. In contrast to TCA 52–1435(a)(1) and (2), the proscribed activity of TCA 52–1435(a)(5) is not limited to persons subject to the registration provisions in TCA 52–1424—1431. Under the clear language of the statute, all persons are subject to prosecution for the activity proscribed under TCA 52–1435(a)(5).

■ In support of their contention that this part of the statute applies only to registrants, the appellants rely on the heading of the section which reads: "Criminal penalties—Registrants." However, this heading was not a part of the original Act, but was added by the Tennessee Code Commission.

Although TCA 1–105 and 1–108 give the Tennessee Code Commission the authority to prepare new section headings, TCA 1–108 also provides that " . . . No such change shall be deemed an alteration of or departure from the enrolled statute."

Accordingly, the heading added by the Tennessee Code Commission in no way affects the applicability of the part in question to registrants and nonregistrants alike. The appellants' reliance on *McLean v. State*, 527 S.W.2d 76 (Tenn.1975), is misplaced. That case does not support their contention that *all* sections of TCA 52–1435(a) apply *solely* to registrants. Although the appellants are nonregistrants, they were properly convicted for the violation of the provision charged here.

Other assignments are those of Moore alone.

■ Moore contends that the chain of custody of the material purchased or seized was not properly shown. The evidence showed that the material was properly transmitted from the receiving officers to other officers and to toxicologists at the University of Tennessee in compliance with the rule laid down in *Ritter v. State*, 3 Tenn.Cr.App. 372, 462 S.W.2d 247 (1970). This assignment is meritless.

Moore urges that the court erred in declining to permit him to go behind the face of the search warrant at the suppression hearing.

The affidavit to the search warrant is facially sufficient. The court granted Moore a hearing out of the presence of the jury on his motion to suppress. There Officer Moses, the affiant, who was also one of the searching officers, testified to the procedure followed in obtaining the search warrant. He typed up the affidavit on November 7 at 12:30 or 1:00 p. m. on the

basis of information supplied by a reliable informant. Moses applied to the magistrate at 4:30 or 5:00 p. m. On cross-examination he said that he was working independently of Sergeant Payne who was supervising Officers Boyd and Jackson and that he did not then know they were involved. He said that his information was from an informant rather than from undercover officers and was given him on the morning of November 7. Because undercover agents had been making purchases, Moore argues that this shows fraud and collusion among the officers and in substance that Moses must have received his information from them rather than from an informant. He made no offer of proof to show that Moses was mistaken or perjured himself. In a large police organization, it is nothing unusual for an officer to work on a case also being investigated, without his knowledge, by another officer. There was no reason for Moses to claim in his affidavit that he received information from an informant rather than from an officer unless that was correct. Four undercover agents had openly made purchases from the appellants without violation of their constitutional rights. There was no occasion or necessity for fraud or collusion among officers to obtain a warrant and there is nothing in the record or offered for the record to show any fraud or collusion here.

The grounds on which a search warrant is issued may be attacked in criminal court as well as before the magistrate. *State v. Little*, 560 S.W.2d 403 (Tenn.1978). The circumstances that authorize the impeachment of an affidavit sufficient on its face are (1) a false statement made with intent to deceive the court, even if immaterial to the issue of probable cause, and (2) a false statement, essential to the establishment of probable cause, recklessly made. *State v. Little, supra.* Since neither circumstance was shown or offered in proof, the trial judge did not err in upholding the validity of the search warrant.

Moore argues that the trial judge should have declared a mistrial when it developed that the trial judge and his wife were engaged in civil litigation with Moore's brother and mother following an automobile collision between the judge's wife and Moore's relatives. Although Moore's brother testified that he had known of this litigation before the trial and for as long as the judge had been on the bench and that he had mentioned it to the appellant "a long time ago," the question was not called to the attention of the court until the final day of the lengthy trial after all of the evidence had been introduced. Apparently counsel was not informed of the matter until the day before. We judicially know that the trial judge assumed the bench September 5, 1975, and this trial began September 21, 1975.

The trial judge said he did not know either Moore or Houston, that any civil litigation was being handled by his insurance company and that the civil litigation with Moore's relatives would have no effect on the criminal case. Since Moore knew all the facts of the litigation long before the case was set for trial, he should have asked the judge to recuse himself at the beginning rather than the end of the trial. By failing to do so he waived any objection to the trial judge's hearing the case. Further, there is nothing to indicate that the civil suits biased or prejudiced the trial judge against the appellant in any way. The assignment is without merit.

Moore contends that the trial court should have declared a mistrial after he had held three of the four defense counsel in contempt of court.

During the six-day trial, the court held three defense counsel in contempt, either for disregarding the court's orders or for outbursts, and fined each $25. The question of whether or not counsel were properly found in contempt is not an issue before us. This record shows nothing to indicate that the citations of counsel in any way impaired their ability to properly represent the appellants or in any way prejudiced them.

All assignments are overruled and the judgments are affirmed.

DWYER, P. J., and TATUM, J., concur.